for the defense. Good morning, your honors. My name is Jonathan Krueger. I'm here on behalf of Eriberto Alvarez. State? Sallie Bilgaert, DILGART, on behalf of Quinnipiac Elite. People of the State of Illinois. Very good. Each side is 15 minutes. Keep it interesting, if you would, to get to your strongest points first. We don't look at our watches, but we do have two other orals behind you, so any time you're ready, Mr. Krueger, was it? Krueger? Krueger, yes. Krueger. Thank you, your honor. Thank you. This morning I plan to focus on the sufficiency of the evidence argument, and I also wanted to briefly address the Rule 416C claim and specifically address the effect of the Illinois Supreme Court's decision in People v. Hill. There's no question that Eriberto Alvarez shot Judy Crespo once. The question was the context. State claimed that Mr. Alvarez broke into the house on Kedzie without permission and started shooting. The defense argued that Mr. Alvarez was present on the back porch of the house on Kedzie with permission and came in to defend the woman that he loved. The opening brief shows many contradictions in the witnesses for the state. In light of them- Did you say he was there to defend the woman he loved? Yes, your honor. That's Alvarez? His account was that he was waiting on the back porch here to fight between David Rios and- What's in the record that shows he was there to defend the woman he loved? Well, that he had showed up and he- Well, he testified, your honor, that he was there and he heard a fight and that's why he entered the kitchen. So there is evidence there. Through the window. Through the window? Wasn't he by a window, coming through a window from the porch? According to the state's witnesses, he first attempted to enter through the window of the dining room. The state's witnesses were all over the place as to what happened there and there was no photographic evidence that there had been an entry there. He eventually did enter through the- Mr. Krieger, wasn't it- Didn't he testify that he was there to pick up his stuff? That's right, your honor. What's this about defending the woman he loved? I mean, I didn't see anything in the record about that. He was there, according to his testimony, he was there to pick up his remaining personal items. Isn't that right? That was his testimony as to why he was initially there, but he testified that there was an argument between David Rios and Judy Crespo, which is why he went through the door between the back porch and the kitchen. Wasn't there also testimony that the argument had to do with trying to keep him out of the house because he was trying to get in the door? The testimony was that David Rios, I'm paraphrasing, got a little crazy when Mr. Alvarez showed up and that Mr. Rios and Judy Crespo were fighting on the other side of the door and that's why he opened the door between the back porch and the kitchen. It seemed like from Mr. Alvarez's testimony that the question was antagonism between Mr. Alvarez and David Rios rather than trying to keep my client out of the house. There was photographic evidence that there had been damage caused to the door, but there was also testimony that the firefighters had been at the house earlier the same day and had caused damage. Who called them to go there? Jeanette Gonzalez, my client's ex-wife, called. And she called in order to scare off Mr. Alvarez because she believed Alvarez was going over there to murder Crespo or maybe the boyfriend. No, that's not what the testimony was. She was worried that something would happen. So she calls the fire department to arrive at a building where people are living for her then maybe still girlfriend of her ex-husband. So what do you think she meant by that, that something was going to happen? Was it something good, a party? Or was it going to be bad, that somebody was going to get pulled in the head? Yes, something negative, Your Honor. I think that's a fair inference. But her testimony, Ashley Rios' testimony, her testimony was that she called them. Ashley Rios testified that the fire department, when they entered, when the firefighters entered, they caused damage to the door. In the state's brief, they argue that Ashley's testimony was regarding a different door. I don't think that that's a fair reading of the record. They were referring to the door between the kitchen and the back porch. Mr. Krieger, isn't this a classic conflict in testimony where one witness says one thing and the other witness says another thing and then the prior fact decides which witness he or she is going to believe who is telling the truth? Isn't that what this case really presents, a clash of the testimony? That is the general standard for reviewing the sufficiency of the evidence. In this particular case, because there is testimony along the lines that you are reciting, but there's also testimony along the lines that the state highlighted in their brief. And that's what finders of fact do. They decide who's telling the truth and who isn't. And how are we, if we're not even looking at the people who are testifying, that's why the rules, you know, that's why the procedural rules exist. How are we to determine which one of those people, which one was telling the truth and which one wasn't if we weren't there and the person who was there, and this was a bench trial, wasn't it? That's right, Your Honor. And the judge listened to it. And this is a classic case of he said this and she said that and then the prior fact decides who they're going to believe. What you're asking us to do is to undo the prior fact because you don't like that outcome. We can't do that. The rules, even if we wanted to, the rules just don't permit us to do that. So tell us something else. Tell us why it is and not that you don't like the outcome. What I'd like you to tell me is why is it that you're asking us to do what you want us to do? Because we have to write something and it has to make sense. With respect, Your Honor, I'm not asking you to substitute your own judgment for the judgment of the trial court. The standard is that no reasonable finder of fact, the court should reverse it, no reasonable finder of fact could have convicted and that's our position. You mentioned that the trial court is in the best position to view the credibility of the witnesses. In this case, the trial court found that there was some evidence of an accidental shooting. It went on, however, to find that, to disbelieve the remainder of my client's testimony, but it did so on a basis that was incorrect. The court found that. Why was it incorrect? The court found that it was inconsistent that Mr. Alvarez would shoot David Rios. It was inconsistent with an accident that he would pursue them. Right. I mean, because he, there was testimony evidence that after he shot the guy once, he followed him through the house and shot him a couple of other times. I mean, that doesn't seem, I can see how a reasonable person would conclude that that's not an accident. To me, that doesn't seem reasonable. There's no question that David Rios and Arabelto Alvarez did not like each other. If my client's testimony was correct and, indeed, Mr. Rios had shoved Judy Crespo at him, that is equally consistent with him having, you say, a pursuer went after him. My client's testimony is that it was a mutual fight. I would also point out that there's some evidence in the record that doesn't require a credibility assessment, which is the location of the knife. According to Mr. Rios, when my client fired at him in the kitchen, he dropped the knife. His daughter also testified that I think she believed that he had dropped the knife in the kitchen. However, the knife was found in the front stairwell where Mr. Rios went after the fight in the bedroom. That piece of physical evidence only supports my client's account and contradicts the account of the state witnesses. But you're not arguing at all that he was improperly found guilty of the attempted murder of David, of Mr. Rios. That's right, Your Honor. Because he got, as your client said, I lit him up. That's right, Your Honor. He wouldn't be in the common parlance. I shot him several times, which he did. So, but the trial court found your client guilty of the felony murder, meaning he didn't have to find intent on the part of your client. When he shot his ex-girlfriend in the head, for whatever reason. I mean, it's strange to me, too. But why wouldn't felony murder apply? Why was the court obligated to buy your guy's story as opposed to Mr. Rios' story? As I said, the physical evidence rebuts Mr. Rios' account. There were many other problems with David Rios' testimony. He couldn't testify clearly as to where he was living. He gave at least four accounts of what had happened, supposedly, at the window of the dining room. He said that he had kicked Mr. Alvarez out, then he pushed Mr. Alvarez out, that Judy Crespo had done that. But your client testified in this case. And he said, yeah, I went to the back door, and then for whatever reason I went to the window, and then I went back to the back door. And then I, you know, the door was open, and I pushed it open. If it's open, I don't know why you need to push it open. I think it was unlocked, would be the idea. Okay. Sorry to interrupt you. That's quite all right. As I said, Mr. Rios gave his account had many discrepancies, significant enough discrepancies, that along with his romantic rivalry, his incentive to downplay his old role as an aggressor in the location of the knife make his testimony incredible, could not have been believed by a reasonable trial fact. We therefore ask that this Court reverse the conviction. Thank you, Mr. Krieger. Mr. Stilgart, I'm sorry, anything else you have? I'm sorry, go ahead. Would you like to hear an argument on the Rule 416C violation? No, because it's been ruled on by our Supreme Court. Correct? Am I mistaken in that? I think Hill is distinguishable, if you'd like to argue. Go ahead and argue Hill, because Hill is new. As your honors are aware, in People v. Hill, the defendant argued that the state had violated Rule 416C by failing to give adequate notice, timely notice, that it would be seeking the death penalty. Now, in Hill, the Illinois Supreme Court, as your honors are no doubt aware, found that the issue was moot, because there was no suggestion in the record that the death eligibility had played a part in a fashion of the sentence. In this case, however, the Court mentioned the seriousness of the offense, specifically in terms of the possibility of death. Now, death wasn't imposed, but the Court obviously considered death to be the highest possible sentence, and the sentence that was imposed was made with that range in mind. In addition, People v. Hill found that the mootness requirement did not apply, the public exception requirement, excuse me, to mootness did not apply, because the issue wouldn't recur. This issue is being raised in this case and also in another case in the third district, so it obviously is recurring. As to the sentencing, though, the defendant is a minimum, I mean a bare minimum, had to get 51. Right? There's no way in the world, based on these charges, he could have gotten less than 51 years in prison. And the max was death or, barring death, life plus 30 consecutive for the attempt murder of Rios. Correct? Right, Your Honor. Okay. Does the witness have any more questions? No. Thank you. Thank you, Mr. Grier. Ms. Stilgart. Good morning. May it please the court, counsel, once again, Sally Dillgard on behalf of the state. With respect to the sufficiency of the evidence for felony murder, I think defendants greatly underestimated the burden that he now bears in this appeal. He has to show you that no reasonable judge could have convicted him, and all the evidence and the inferences therefrom have to be viewed in the same light. Defendant can't obtain a reversal simply by arguing that there were contradictions or by arguing that his testimony was more credible. That was for the trial judge to sort out. Let's look at the most important points. First of all, lack of consent. The judge found that defendant didn't have consent or authority to enter the home, and the judge was right. Defendant tried to suggest that he had consent to be in the house because he was still living there at the time. But when the police asked him for his address at the time of his arrest, defendant said he was living with his mother. Moreover, as the judge, Judge Clement, pointed out. Hello. There's plenty of seats up front. It's not like church where you can stay in the back, you know, and say I'm trying to avoid the collection plate. There are plenty of seats, and if you have purses or briefs, lawyers and other observers, please pick them up so the children can sit. I think that's for the lawyers. It's a good thing. It is a good thing. So that's how you avoid the collection. That is how you avoid it. Well, it's helpful. All right. I'm sorry, Ms. Stillgard, please continue. Okay. So when the police asked him for his address, defendant said he was living with his mother. He was not living there at the time. Moreover, as Judge Fleming pointed out, defendant himself admitted that he had to call the victim. He had to call Judy that morning to get permission to come over and get his clothing. And that makes sense because she'd sworn out an order of protection against him the month before. He had to ask her and consent to be there because he didn't have any authority to be there. He initially tried to enter the home by crawling through the dining room window, and he now argues, well, there was some confusion about whether it was. Your opponents point that there was some evidence of an accidental shooting. That's a main argument that they made. And I guess although he didn't quite make this argument, the thrust of that is the standard is beyond a reasonable doubt. And I guess his argument is if there was sufficient evidence of an accidental shooting, as your client argues, that would undercut or undermine the beyond a reasonable doubt finding or standard that the judge could possibly have made. Can you comment on that, please? I'd be glad to. There was not sufficient evidence of an accident. Let's recall the evidence here. When the defendant testified, he claimed that after he entered the house, he pulled out his gun. He pulled out his gun at the time he went into the home. He then claimed, though, that even though he was pointing a gun at David Rios... It was the trial court that said that. The trial court is the one that actually said there is some evidence that this was accidental. So it's not just that the opponent is making that statement. The trial court actually commented or made that comment in the record. I don't believe, Judge, that the trial court judge did make that comment. No, I don't. It's in the record. I know. I understand. But he either misspoke or it was misrecorded because in the very next breath, in the very next sentence, he says, if the shooting had been an accident, why then would defendant chase David Rios through the house and shoot him? Well, I ask that question, too. But the fact is it's in the record and the court did say it. So for us to look behind what the court says is, well, he didn't know what he was talking about. He must have made a mistake and agreed that he made a mistake on that. But then when he made a finding of guilt on something else, no, well, he didn't make a mistake on that. So I'm just asking you, how do we reconcile that? That's what your opponent's point is on that particular issue. That's what Mr. Krieger is arguing. And I just would like you to comment on that because the two things are not consistent as far as I can see. Okay. Two points, Judge. First of all, with respect to the judge's remark, I think if you read it in context, you would agree with my interpretation that he did not find it was an accident. But let me go back to the evidence and finish answering your question. I don't know. Okay. Well, I think it's a two-part question, Judge, because the defendant testified that he walks into the house with a gun and then David has a knife. He then claims that even though he was pointing the gun at David, that David cut to his left, I think were the exact words, got behind Judy and pulled, not pushed, but pulled her into the defendant. And I ask you, why would David get behind his girlfriend and push her into a man who's holding a gun? A reasonable prior effect could reject this, and Judge Fleming did, too. He specifically stated on the record on page TT, tom-tom 63, that he didn't believe a word of the defendant's testimony and he wasn't required to do so. But what does the record reflect, if you have it in front of you, Ms. Dillinger? I'm sorry, Judge, I can't hear you. What exactly did the judge say in regards of accidental shooting? At page 14 of the white brief, the judge noted that the physical evidence, now it's quote marks, corroborates some accidental shooting. Now, I bring this up because I share your concern that he didn't say that at all, that the court reporters who have a standard of only being right that 95 percent is satisfactory, that they're wrong then 5 percent of the time. And they do that to me a lot as a trial lawyer because I talk very fast. And so, but couldn't your office, when they read this thing, which I would think would be kind of blatant, oh, he must not have meant that, file a correction of the record in front of Judge Fleming, said, Judge Fleming, did you mean there was evidence of accidental shooting or not? And Judge Fleming then could correct the record and say, no, I never said any, they left out the word no. You're allowed to correct the record, as is the trial court. And nobody sought to do that, did they? I understand your point, Judge, but I didn't think it was necessary because of the totality of what Judge Fleming said. Because immediately after that he says, no, it wasn't an accident. Okay. So I don't think it was necessary. All right. Defendant, further claim that Judy grabbed the gun and that the gun accidentally I know you don't, you may not think it's necessary, but, you know, because we have to rule on this. I still would like you to answer my question, which has to do with the beyond a reasonable doubt standard. That's what they're arguing. If there is some, some evidence, the testimony corroborates some evidence of an accidental shooting, how does that square with, oh, well, we've made a finding that this was not accidental beyond a reasonable doubt? I mean, you can't just brush over it and say, well, because you're satisfied, that's enough for us, because it's not. I'd like you to respond and comment on that a little bit. Once again, I think the standard of review is what is determinative here, because the judge could choose to believe the testimony of the State's witnesses, and clearly he did. And it was for him to sort this out, not for us. Well, he did find the defendant guilty of felony murder, right? So even an accident wouldn't save him, because if anybody dies during a forcible felony, in this case home invasion in the attempt murder of Rios, would also be obligated, a prior effect would be obligated to find them guilty of any death that resulted from that same incident. Under the felony murder doctrine, would that be right? But I believe that the judge also found these killings, these shootings were intentional. That's our answer for you. That's the answer I was looking for. Thank you, Judge Quigley. Any time, Judge Cunningham. I believe that the judge also found that these shootings were intentional, so that would be the other part of it. I think he did, but I don't know why he didn't. I mean, having been in there for many years, yes, if I see some ex-paramore walk into a lady's home, kick in the window, kick in the door, point a gun at her, blow her brains out, I would say, boy, that's the worst murder I've seen in a couple hours. Boy, this is really bad. It's intentional murder. But he didn't. He said, oh, there's some accidents and stuff. I don't know. And, again, he said what he said.